IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2010

## KENNETH RAY FOX, JR. v. KRISTI DANIELLE FOX

**Appeal from the Chancery Court for Rutherford County**
**No. 06-1815DR     Don R. Ash, Judge**

**No. M2009-01884-COA-R3-CV - Filed October 26, 2010**

The trial court found Husband guilty of two counts of criminal contempt for violation of a court order. Husband appeals the findings of contempt on the ground that he did not receive proper notice. The trial court dismissed a third count of criminal contempt without prejudice and allowed Wife to re-file her claim so as to provide Husband with proper notice. We affirm the court's two findings of contempt and reverse its dismissal of the third count of contempt, finding that Husband was given sufficient notice. We remand the matter to the court for a determination of whether Husband violated the order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Michael K. Parsley, Nashville, Tennessee, for the appellant, Kenneth Ray Fox, Jr.

Phillip M. George, Nashville, Tennessee, for the appellee, Kristi Danielle Fox.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Kenneth Ray Fox, Jr. ("Husband") and Kristi Danielle Fox ("Wife") were married in 1992 and have two minor children. Husband filed a complaint for absolute divorce on November 22, 2006, citing irreconcilable differences. Wife filed an answer and counter-complaint on November 12, 2008.

On November 21, 2008, a special master was appointed. The parties appeared before the special master on March 4, 2009. In a report dated March 5, 2009, the special master stated that it was "appropriate to grant a Restraining Order against the husband prohibiting him from contacting the wife and minor children in any way pending further hearings in this matter." No explanation for the restraining order was offered. The report stated that the parties had ten days to file an objection. The record contains a handwritten letter from Husband, dated March 11, 2009, objecting to the restraining order.[1] Husband stated the following in his letter:

> No cause for including my children was offered or given, and the needless separation is, I believe causing all parties severe emotional stress and pain. Neither my wife or I, have ever believed the children to be in danger when in the presence of the other, and there is no history whatsoever in either case of physical abuse.

Another hearing before the special master was held on March 18, 2009.[2] The special master filed a report on March 26, 2009. The report states that Wife would be designated the primary residential parent, and Husband would pay Wife child support in the amount of $687.00 per month according to the Child Support Guidelines. Husband was granted visitation during the months of March and April 2009 in accordance with the calendar attached to the report.[3] The special master ordered that the restraining order against Husband was to remain in effect, except as it pertained to his children. The Chancery Court for Rutherford County approved the special master's report on April 9, 2009, stating that ten days had expired since the entry of the special master's report and no objection had been filed.

---

[1] Husband filed an affidavit of indigency on November 22, 2006. On that day, the chancellor signed an order which notes that Husband is "qualified to file case upon an oath of indigency." On April 23, 2008, Husband, through his attorney, filed a notice of non-indigency.

[2] Apparently, this second hearing before the special master replaced a hearing scheduled by the trial court for March 20, 2009, to hear the objection to the special master's report.

[3] The calendar reflects that Husband was to receive roughly equal residential parenting time as Wife, keeping the children for three or four days of every week. Wife's subsequent petition for contempt, filed May 11, 2009, explains why the court only set the parenting schedule for a two-month period: "[V]isitation was specified for the months of March and April and the parties expected to subsequently enter another order providing for visitation in the following months if the visitation worked in the best interest of the minor children."

On May 4, 2009, Husband filed a motion for a temporary restraining order prohibiting Wife from altering the parenting time that the parties had been exercising with the children. Husband's motion states that the parties had been exercising essentially equal parenting time pursuant to the agreed order filed by the special master on March 26, 2009, but Wife decided he should receive only two days of parenting time, presumably per week, with the children. Husband moved the court to set temporary parenting time as it deemed appropriate.

On May 11, 2009, Wife petitioned the court to hold Husband in both civil and criminal contempt of court for failure to comply with the restraining order. Wife's motion for contempt contains the following assertions:

10. The mother avers that the father has continually and willfully failed to comply with the Restraining Order. Specifically, the father has continued to harass the mother by enlisting friends and family members to contact the mother to apply pressure to her. In addition, when the children return from being with their father, they ask questions about divorce and use terminology such as 'child support' that they have learned when they have been with their father.

11. On March 11, 2009, the father came to the mother's house, climbed the rear fence, and was on her deck when she came home. When she opened the back door to let the dog out, Mr. Fox came into the house and began to beg the mother not to call the police. The children, who were present, began to scream in fear and the mother immediately ran to the front door and stood in it so that neighbors or passers-by could observe her. The mother was finally able to get the husband's sister, Lynn Barnes, to come by and take him away. This event left the mother and the children extremely upset and frightened.

12. On April 21, 2009, the husband took the mother's car from the bank parking lot where she worked. He did return it the same day.

13. On May 3, 2009, the husband came down to the dead-end street where the mother resides. As the mother was on her way to pick-up the children from the sitter, the husband rolled down his window and screamed 'liar' at the mother.

14. The mother alleges that the father has an extremely volatile temper and has done considerable damage to the parties' home in fits of anger. The mother has observed the father's ongoing and increasing inability to contain his anger and has become fearful for her safety.

Wife asked the court to find Husband guilty of contempt for failure to abide by previous court orders and sentence him to jail for a period of six months, or in the alternative, find him guilty of criminal contempt and sentence him to jail for a period of ten days per violation.

A hearing on the motion for contempt was held on August 11, 2009, and the court issued an order on August 20, 2009. Husband was found guilty of contempt of a court order for his behavior on April 21, 2009, (paragraph 12) and May 3, 2009, (paragraph 13) and was sentenced to ten days in jail for each offense.[4] The court found that Wife's petition for contempt failed to adequately notify Husband in regard to paragraphs 10, 11, and 14. The court then dismissed paragraphs 10 and 14 with prejudice and dismissed paragraph 11 without prejudice. The court noted that paragraph 11 could be re-filed to insure that Husband received the proper notice.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

Guilt in a criminal contempt case must be established by proof beyond a reasonable doubt. *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). Appellate courts review a trial court's decision of whether to impose contempt sanctions under an abuse of discretion standard and will reverse criminal contempt convictions "only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Moody v. Hutchison*, 159 S.W.3d 15, 25 (Tenn. Ct. App. 2004) (quoting *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993)).

---

[4] Contempt is classified as civil or criminal based on the action taken by the court to address the contempt. *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000). A court imposes civil contempt against one party for the benefit of the other party. *Foster v. Foster*, No. M2006-01277-COA-R3-CV, 2007 WL 4530813, at *3 (Tenn. Ct. App. Dec. 20, 2007). "In a civil contempt action, the remedy imposed by the court upon a finding of contempt is designed to compel compliance with or performance of a court order." *Town of Cornersville v. Harmon*, No. M2003-01061-COA-R3-CV, 2005 WL 229872, at *5 (Tenn. Ct. App. Jan. 28, 2005). This is in contrast to criminal contempt, which is punitive in nature. *Foster*, 2007 WL 4530813, at *3. In the present case, the trial court found Husband in contempt as punishment for failure to comply with prior court orders. We are therefore dealing with criminal contempt.

ANALYSIS

On appeal, Husband challenges the court's two findings of criminal contempt with regard to paragraphs 12 and 13, as well as the court's dismissal of paragraph 11 without prejudice. Husband makes four assertions in his brief: (1) He was not in contempt of a court order, and Wife's pleadings are insufficient. (2) He was not afforded due process because the petition fails to state what order he allegedly violated or what actions allegedly constituted contempt. (3) The trial court erred in refusing to grant Husband's motion to dismiss for Wife's failure to comply with due process requirements. (4) The trial court erred in dismissing paragraph 11 of the petition without prejudice because it violates double jeopardy principles.

Wife did not file a brief in this matter; her attorney during the divorce proceedings filed a letter with this court noting that his client had no interest in contesting Husband's appeal.

Notice

Husband first argues that he was denied due process because Wife failed to provide him proper notice.[5] Husband makes three assertions with regard to the notice requirement for criminal contempt: (1) the restraining orders themselves were ambiguous; (2) it was unclear which of the two restraining orders Wife was relying on in her petition for contempt; (3) with regard to the April 21, 2009 contempt charge, neither restraining order prohibited Husband from the specific act for which he was held in contempt.

All courts have the power to punish for contempt, pursuant to Tenn. Code Ann. § 16-1-103. Courts can punish for contempt in cases of "willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, *order*, rule, decree, or command of such courts." Tenn. Code Ann. § 29-9-102(3) (emphasis added). In the present case, Father was charged with criminal contempt. Pursuant to Tenn. R. Crim. P. 42(b), a criminal contempt shall be prosecuted on notice. The notice shall:

(A) state the time and place of the hearing;
(B) allow the defendant a reasonable time to prepare a defense; and
(C) state the essential facts constituting the criminal contempt charged and describe it as such.

---

[5] Both of the first two issues that Husband identified in his brief relate to the issue of notice. Therefore, we will consider them together.

Tenn. R. Crim. P. 42(b)(1). Adequate notice must be clear and unambiguous to the average citizen. *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006). The "essential facts" referred to under Tenn. R. Crim. P. 42(b)(1) include those that do the following:

> (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment-not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous.

*Id.* at 13-14. Husband focuses his argument on the third of these requirements.

Husband first contends that the restraining orders on which Wife relied in her petition for contempt are themselves ambiguous. Husband cites Tenn. R. Civ. P. 65.02(1) for the proposition that restraining orders must be as specific as reasonably possible and describe in detail the act that is restrained. The restraining order must be specific enough that the restrained party is able to ascertain from the order itself exactly what acts are prohibited. *Hogue v. Hogue*, 147 S.W.3d 245, 248 (Tenn. Ct. App. 2004). We find that the orders are not ambiguous. Restraining orders prohibiting contact between parties are common. No vague or ambiguous terms were used. Husband cites no case in support of his position that a restraining order prohibiting "contact" lacks specificity. The orders properly apprised Husband of his obligations, and an ordinary person would not have any trouble deciphering them. The issue of whether Husband's behavior was the type that the orders sought to prohibit is another question, which we will address.

Three alleged actions by Husband are at issue on appeal: (1) Husband entered Wife's home on March 11. (2) Husband took Wife's car from the parking lot of her employer on April 21. (3) Husband drove down the street on which Wife lived and yelled "liar" at her on May 3. The relevant question is whether Wife's petition for contempt gave Husband adequate notice. Husband claims that it did not because Wife's petition for contempt references both of the restraining orders imposed by the court and he did not know which order Wife was relying on for each charge of contempt. Paragraph 5 of Wife's petition states, "The Special Master's Report was entered restraining Mr. Fox from contacting his wife and minor children in any way pending further hearings in this matter." Paragraph 9 of Wife's petition states, "Finally, the Special Master's Report kept the Restraining Order in place for the mother preventing the father from coming around her or for contacting her for any reason pending further hearings." These are accurate statements of what the orders state: the March 4th order prohibits Husband "from contacting the wife and minor children in any

way pending further hearings in this matter," and the March 18th order states that "the father is not to come around the mother or contact her for any reason pending further hearings in this matter."[6]

Husband claims that Wife's petition for contempt was unclear in specifying the order upon which she was relying, which adversely affected his ability to defend against the petition. Husband points to testimony by Wife and statements by Wife's attorney during the contempt hearing as evidence of the confusion. The following is an exchange that occurred between the court and Mr. George, Wife's attorney:

> THE COURT: I want you to tell me what the basis for the contempt is. How many different instances do we have?
>
> MR. GEORGE: In March, four or five. In March, he came to the residence despite the restraining order. He climbed over the fence. He came in the house and terrorized her and the children. She stood in the doorway until she could get his sister to come and take him away.
>
> In April, he came to the bank where she works and took her car. He did return it. Then in May, he came down the street where she lived, which is a dead-end street, he had absolutely no business there, and he screamed something at her. And then, in June, we had a hearing here, and he brought the children to that hearing, apparently, for the purpose of having the kids testify. These kids were absolutely terrified. As a result, Ms. Fox has had these children placed into counseling. He has continued to have, after his lawyer, I'm sure, admonished him about his behavior, he has had his brother e-mail her on a constant basis. I think she got like four e-mails yesterday. He just will not—

Husband insists that "[n]owhere in the Petition for Contempt are four or five occasions of contempt pled against [Husband] for actions in March, 2009." However, it is clear that, despite how the transcription reads, Wife's attorney was referencing four or five instances of contempt overall and not four or five instances of contempt in March alone. Wife's attorney enumerated the instances of contempt, by month, for which Wife was accusing Husband, both in the petition and during the proceeding.

---

[6] The restraining orders were referred to as the "March 4th" and "March 18th" orders by the court and the parties at the trial court level. The "March 4th order" is actually the special master's report that was filed on March 5, 2009 for the hearing held on March 4, 2009. The "March 18th order" is actually the special master's report that was filed on March 26, 2009 for the hearing held on March 18, 2009.

Husband next points to the following testimony by Wife at the contempt hearing:

Q: Ma'am, is this a copy of your contempt petition that you filed with The Court?

A: Yes.

Q: Ma'am, which order—which dates of the court order are you trying to hold Mr. Fox in contempt of?

A: Well, there were—

Q: Which date?

A: I don't know the exact date.

Q: You don't know. Can you read your petition for which date?

A: I guess March 18th. I don't know.

Q: Okay. All right. Now, is not March 11th, 2009 before March 18th?

A: Yes.

Q: Okay. And that's the day you say he entered the house, correct?

A: Correct.

Husband also cites the following exchange between the court and Wife's attorney:

THE COURT: . . . They make the argument here that in your petition you're referring mainly to the March 18th order. Would you agree with that or disagree with that?

MR. GEORGE: Well, yes and no.

THE COURT: Not a good answer. Clear that up.

MR. GEORGE: Very well. To the extent that in this petition for contempt we are relying on that particular order, and, obviously, the March 11th [incident]

would come before that, but that March 11th incident comes after the restraining order that's issued in every case restraining him from harassing her, and that certainly constitutes harassment. It doesn't matter that if we've got three, four or five incidents, Your Honor. The fact is that he's not going to obey the order of The Court until somebody makes him. That's the bottom line.

First, we note that adequate notice for purposes of indirect criminal contempt, which occurs outside of the court's presence, must be given before the contempt hearing, not during the hearing.[7] *See* Tenn. R. Crim. P. 42(b)(1) (providing that criminal contempt notice must state the time and place of the hearing, allow the defendant reasonable time to prepare a defense, and state the essential facts constituting the charge). Thus, it is the sufficiency of the petition that is at issue. *See Long*, 221 S.W.3d at 13 (noting that "parties seeking to hold another in criminal contempt should draft their petitions to comply with Tenn. R. Crim. P. 42(b)'s notice requirements"). Wife's petition for contempt satisfied all three requirements of Tenn. R. Crim. P. 42(b)(1).

The trial court agreed with Husband's position that the petition for contempt did not adequately specify which order it was seeking to enforce with respect to the March 11th incident. As a result, the court dismissed that incident, the only one that occurred prior to the March 18th order. The trial court's reasoning seems to be that the March 4th order only restrained Husband from contacting Wife, while the March 18th order was more specific in restraining Husband from coming around Wife or contacting her for any reason. If the March 4th order was not sufficient to apprise Husband of what conduct was prohibited, the March 18th order was, and the trial court correctly held Husband accountable for his contemptuous acts that occurred after March 18th. The court stated the following:

> Okay. I'm going to agree that I think it is somewhat ambiguous, certainly, in the petition about whether it's the March 4th or the March 18th order. And as was argued, I think this gentleman has the right to know exactly what order he is facing in regard to the contempt part, but I do think that it is clear from the testimony that on April 21, 2009 that he came around her, even though she was in the building. Certainly he doesn't have the—that's coming around her, or at least trying to contact her by just coming and picking up a car. So I'm going to find him in contempt and sentence him to 10 days on that. And then next, on the May 3rd, there is no evidence to contradict that he did not—and I agree, he has the right to travel up and down the streets, I certainly agree with that,

___

[7] Direct criminal contempt, which occurs in the court's presence, is not subject to the same notice requirements. Tenn. R. Crim. P. 42(b).

but he doesn't have the right to stop the vehicle and confront her and yell at her, especially when this order is in place. So I'm going to sentence him to 10 days on that. . . . I'll dismiss this petition in regard to the March 11th event. I'll do that without prejudice, since there is ambiguity there. . . .

We disagree with the trial court's dismissal of count 11 of Wife's petition for Husband's actions on March 11, 2009 when he entered Wife's home. While Wife did not in her petition for contempt delineate which of the two restraining orders she was relying on for each of Husband's allegedly contemptuous acts, she identified both restraining orders and it is apparent from the petition that the March 4th restraining order was the one upon which she was relying for Husband's actions on March 11th, as it was the only restraining order in place at the time. Wife likely felt it was unnecessary to more carefully distinguish the two restraining orders in her petition since they were nearly identical in language. In fact, the only reason the second restraining order was implemented was to clarify the persons whom Husband was prohibited from contacting, not to modify the type of behavior prohibited.[8] Husband has every right to be apprised of the charges against him, but a certain level of common sense must prevail. A simple examination of the chronology of the events reveals that Wife had to rely on the March 4th restraining order for Husband's actions on March 11th since the March 18th order had not yet been entered.

With respect to the April 21st incident, Husband claims that there was no order preventing him from accessing Wife's car, which the parties jointly owned. Wife testified that she worked as a teller at a bank where the car was parked and one of her co-workers notified her that Husband was taking her car. Wife estimated that she was "five or six yards" away at the time. We find that the trial court did not abuse its discretion in concluding that "that's coming around her, or at least trying to contact her by just coming and picking up a car."

With respect to the May 3rd incident, Husband claims that Wife "fails to allege a specific violation of a specific court order sufficient to apprise and give notice to [Husband] by mere inspection of the pleading that [Wife] sought to hold [Husband] in contempt for his actions." We disagree. Wife's petition for contempt clearly and accurately references the court's March 4th order "prohibiting him from contacting the wife . . . in any way" and the March 18th order "preventing the father from coming around her or for contacting her for any

---

[8] The March 18th order states the following:

The Restraining Order heretofore observed by the parties that the father is not to come around the mother or contact her for any reason pending further hearings in this matter shall continue in place, with the modification that the Restraining Order prohibiting and restraining the Father from contacting or coming about his children is hereby dismissed.

reason." Driving down the street on which Wife resided and yelling "liar" at her constitutes a violation under either of the two orders. Husband's attorney even acknowledged at the hearing, "I believe that all of the counts, except maybe for that liar paragraph, should be dismissed." The trial court did not abuse its discretion in finding Husband guilty of contempt for his actions on May 3, 2009.

We conclude that Husband was given sufficient notice of the criminal contempt charges in accordance with Tenn. R. Crim. P. 42(b). We affirm the trial court's findings with regard to Husband's contemptuous acts on April 21, 2009 and May 3, 2009. We reverse the trial court's dismissal without prejudice of count 11 of Wife's petition for contempt and remand the case to the trial court for a determination of whether Husband violated the March 4th restraining order.[9] *See Long*, 221 S.W.3d at 14 (reversing the trial court's dismissal without prejudice of wife's petition for contempt for failure to provide sufficient notice and remanding for further proceedings consistent with Tenn. R. Crim. P. 42(b)).

## Motion to Dismiss

Husband claims that the trial court erred in refusing to hear his motion to dismiss for Wife's failure "to comply with the requirements guaranteed by due process." At the start of the contempt hearing, Husband's counsel made a motion to dismiss:

THE COURT: Thank you. Counsel has [Husband] been doing these things? Has he been going around her?

MR. PARSLEY: Your Honor, before we get into that, I would like to make a motion to dismiss this. Counsel cannot state what he is prosecuting. He doesn't know whether it's four or five occasions. I don't know what I'm defending.

THE COURT: I'm denying that. So, tell me, do you want to go ahead and proceed with—did he come around these places or not?

MR. PARSLEY: Your Honor, I can't answer that.

THE COURT: Okay. Thank you. Have a seat. Call your first witness.

_____

[9] Because we reverse the trial court's dismissal without prejudice of count 11 of Wife's petition for contempt, we need not address Husband's argument that allowing Wife to re-file her petition violates principles of double jeopardy.

MR. GEORGE: I call Ms. Fox, Your Honor.

MR. PARSLEY: Your Honor, I have a right to put my motion into the record for appeal. Without that, I can't—

THE COURT: I denied your motion. Did you file a written motion?

MR. PARSLEY: No, Your Honor.

THE COURT: Okay. You've got to file those. Okay. Step up here, please ma'am.

Later, during his cross-examination of Wife, Mr. Parsley again mentioned his motion to dismiss:

THE COURT: It looks like there was an original master's report on March 4, 2009, and that's when the restraining order was granted, and then it looks like a second hearing on March 18th where there was the designation of the primary residential parent, I guess. Does that sound right?

MR. PARSLEY: Your Honor, that was part of my motion. That order is not—

THE COURT: You can't just get up and make oral motions.

MR. PARSLEY: Your Honor, due process, that is part of due process.

THE COURT: They have to have notice. You didn't do it. So my question was, was there a hearing March 4th and then another March 18th?

MR. PARSLEY: There was.

Mr. Parsley again raised his motion to dismiss at the close of Wife's proof:

MR. PARSLEY: Your Honor, I make a motion to dismiss after the close of his proof as cause, Your Honor. His client doesn't know what she is prosecuting. Unfortunately, Mr. George doesn't know what he's prosecuting. He doesn't know whether it's four or five counts. I don't know what I'm defending.

THE COURT: I think I've got three counts. March 11th, it says he came around. There was an order from March 4th saying that he could not come

-12-

around her, or have contact with her, I'm sorry. And then there is another order, I think, March 18th, that said that he couldn't come around her or have contact with her. They have alleged two violations, April 21, 2009 and May 3, 2009. So I think those are the only three. Based on your question, I think those are the only three things that I could possibly consider.

. . .

MR. PARSLEY: All right, Your Honor. That goes into my motion to dismiss at the close of his proof. His client stated on the stand that she was trying to contempt him for the March 18th order. For that reason, he cannot be held in contempt for March 11, 2009.

THE COURT: Does the petition, and I'm sorry I'm asking this question, I should know this answer, does the petition limit itself to the March 18th order?

MR. PARSLEY: Your Honor, this petition is vague and ambiguous. What I have is paragraph six stating an actual order.

THE COURT: Right.

MR. PARSLEY: Paragraph nine, I guess, trying to quote the order, but getting the order wrong. I don't see the March 4th order.

THE COURT: Paragraph nine. What is wrong about that?

MR. PARSLEY: Coming around her or contacting her for any reason. That's not any of The Court's orders.

THE COURT: That's not in the order of the 18th?

MR. PARSLEY: Let me look here and see.

THE COURT: On the fourth, you're right. On the 4th, it says that he's prohibited from coming around her. He's prohibited from contacting the wife or minor child in any way. If you flip over and look at the 18th, . . . [i]t says that it will remain in place with the modification of prohibiting and restraining from contacting or coming about these children.

Husband claims he was "denied the right to question due process at the trial court level when Counsel's Motion to Dismiss was ignored."[10] The trial court did not ignore Husband's motion to dismiss. The court initially refused to hear Husband's motion to dismiss, but the transcript from the hearing makes clear that the court did, in fact, consider Husband's motion. The court explicitly stated at one point, "I'm going to deny that [Husband's motion to dismiss], at this time, but I'll reserve it until the end of your proof."

The basis of Husband's motion to dismiss was that Wife did not know what she was prosecuting and Husband did not know what he was defending based on ambiguities in Wife's petition. Husband's attorney first insisted that he did not know how many counts of contempt he was defending. The court identified three counts and explained them to Husband's attorney. Husband's attorney then argued that it was unclear from Wife's petition which of the two orders she was relying on for each of Husband's alleged violations. The court considered Husband's argument and ruled in his favor as to the March 11, 2009 incident, dismissing it without prejudice because of "ambiguity." The court rejected Husband's argument for the April 21, 2009 and May 3, 2009 incidents, finding that Husband was sufficiently notified of the charges for contempt. The essence of Husband's motion to dismiss was heard and considered.

CONCLUSION

The decision of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[10] The only authority that Husband cites in support of his position is *Cooner v. Cooner*, No. 01-A-01-9701-CV00021, 1997 WL 625277, at *7 (Tenn. Ct. App. Oct. 10, 1997), for the proposition that "even without prior complaint, the question of due process is open for review, even on appeal." *Cooner* does not concern a motion to dismiss and is not on point. The portions of *Cooner* that Husband cites in his brief refer to the following issue identified by the court: "where a person accused of criminal contempt files an answer to the petition for contempt and appears for trial with counsel who presents no demand for due process, is the issue of due process waived?" *Id.* at *10.