IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 4, 2003 Session

## CHER LYNN HOGUE  v. JOSEPH RANDOLPH HOGUE, JR.

**Appeal from the Chancery Court for Williamson County**
**No. 28527      R. E. Lee Davies, Judge**

**No. M2002-02500-COA-R3-CV - Filed March 24, 2004**

Chancellor issued restraining order upon the filing of the divorce complaint which prohibited the father from "exposing the child to . . . his gay lifestyle" and thereafter held the father in contempt for telling the child he was gay.  Tenn. R. Civ. P. 65.02(1) requires restraining orders and injunctions to be as specific as reasonably possible and to describe in reasonable detail the act that is restrained or enjoined.  The "domestic relations" exception in Tenn. R. Civ. P. 65.07 does not excuse a trial court from compliance with the specificity requirements of Tenn. R. Civ. P. 65.02(1).  We find that the restraining order does not meet the requirements of Tenn. R. Civ. P. 65.02(1) because it does not describe the prohibited acts in reasonable detail.  Therefore, we hold that the temporary restraining order is unenforceable and the father could not be punished for violating an unenforceable restraint or order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Robert J. Turner and Samuel L. Felker, Nashville, Tennessee, and Kenneth Y. Choe, New York, New York, for the appellant, Joseph Randolph Hogue.

Rose Palermo, Nashville, Tennessee, for the appellee, Cher Lynn Hogue.

### OPINION

This matter is before the court upon the Petition to Rehear filed by appellant, Joseph Randolph Hogue.  In that we granted the Petition to Rehear and have fully addressed the issues in the following opinion, we withdraw our previous opinion which was filed on January 6, 2004.

The dispositive issue before us is whether appellant, Joseph Randolph Hogue, should have been held in contempt for violating a restraining order, which prohibited him from "exposing the child to . . . his gay lifestyle," by telling his son he was gay.

Appellant set forth two other issues in his brief. One of the issues was whether the temporary restraining order was properly issued and whether it expired prior to the alleged offense. Our ruling makes this issue moot. The other issue was whether the trial court erred in amending the temporary parenting plan. Counsel for Appellant advised that this issue was now moot. Therefore, neither of these issues will be discussed for they are both moot.[1] An additional issue is presented by Appellee, Cher Lynn Hogue, mother of the child, who seeks damages alleging the appeal is frivolous.

This appeal arises out of a divorce proceeding in the Williamson County Chancery Court. On February 6, 2002, Mrs. Hogue, mother of the couple's minor child, filed a complaint for divorce alleging irreconcilable differences and inappropriate marital conduct. In the complaint she alleged that her husband, Mr. Hogue, father of the minor child, left the marital home to "pursue his gay lifestyle." She further alleged that her husband would expose their son to his new lifestyle, that such exposure was against the advice of the child's counselor and requested a restraining order to prevent such.

A Temporary Restraining Order was entered the day the Complaint was filed, which reads in pertinent part:

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Husband, Joseph Randolph Hogue, Jr., shall be and he hereby is RESTRAINED, pending a final hearing in this cause, from taking the child around or otherwise exposing the child to his gay lover(s) and/or his gay lifestyle.

On August 2, 2002 Mrs. Hogue filed a Petition for Contempt alleging that Mr. Hogue had violated the restraining order (1) by allowing the child to be in the presence of the father's gay lover at Mr. Hogue's church and at Mr. Hogue's apartment, and (2) by telling the child he was gay.

Witnesses testifying at the contempt hearing included the child's counselor, David Thomas, and the Hogues' child. Mr. Thomas, a psychologist, who had counseled the child almost weekly since the previous fall, stated that both parents were working with him in helping the child. Counsel for Mrs. Hogue asked Mr. Thomas if he had advised the parents not to tell the child Mr. Hogue was gay. Mr. Thomas testified, "I told them that he [the child] wasn't developmentally ready for that information because he was starting to deal with divorce and separation so I'd advised them not to tell him." Subsequently, Mr. Hogue informed Mr. Thomas that he told the child he was gay. The judge then asked Mr. Thomas if it was detrimental to the child that he found out this information.

---

[1] This court filed an opinion in this matter on January 6, 2004. Mr. Hogue filed a petition to rehear on January 16, 2004 seeking our reconsideration of the issue that is the subject of this opinion and attempting to raise new grounds for review. These "new" grounds were not raised by the father in his initial appeal; therefore, he waived the "new" grounds. Moreover, the ruling set forth herein renders the "new" grounds moot. In her reply brief to the petition to rehear, Mrs. Hogue asks that we reconsider our earlier holding on contempt. The ruling set forth in this opinion vacates the restraining order, which makes her request moot. Moreover, this opinion supersedes the prior opinion in this matter filed January 6, 2004.

Mr. Thomas testified, "I feel it was somewhat detrimental." Then Mrs. Hogue's attorney asked Mr. Thomas if it would be better for the child to spend less time with Mr. Hogue, to which Mr. Thomas responded, "Absolutely not."

The child was called to testify by Mrs. Hogue's attorney. He testified that his father told him he was gay at the end of summer on the last week with his Dad. "Yeah, my friends were wanting me to come and play and Dad just wanted to finish our talk. He pointed out on TV people that were gay, and then I went out and played."

At the conclusion of the hearing the Chancellor found Mr. Hogue to be in contempt for telling his son that he was gay and sentenced him to serve two days in the Williamson County Jail.[2] It is that decision that is the subject of this appeal.

## Standard of Review

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn.1996) and Tenn. R. App. P. 13(d). The trial court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn.1993). *See City of Knoxville v. Entertainment Resources, LLC*, No. E2002-01143-COA-R3-CV, 2003 WL 22762195, *3 (Tenn. Ct. App. Nov. 21, 2003).

## Requisites of Restraining Orders or Injunctions

The applicable requisites of restraining orders and injunctions are specified in Tenn. R. Civ. P. 65.02(1). The rule reads, "Every restraining order or injunction *shall be specific in terms and shall describe in reasonable detail*, . . . *the act restrained* or enjoined." (emphasis added)

The rule is "designed to protect persons from vague, loosely-drafted restraining orders and preliminary injunctions that do not give the addressee clear guidance of the conduct prohibited or compelled." Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 4-3(e), p.118 (1999). The specificity requirements of Rule 65.02(1) of the Tennessee Rules of Civil Procedure are identical to Federal Rule of Civil Procedure 65(d). The federal rule established a drafting standard such that "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." Wright, Miller & Kane, *Federal Practice and Procedure Civil* 2d § 2955. The standard of specificity is such that the enjoined party must be able to ascertain from the order itself exactly what acts are prohibited. *Sanders v. Air Line Pilots Ass'n, Intern.*, 473 F. 2d 244, 247 (C.A. 2d., 1972). The language in Fed. R. Civ. P. 65(d) "strongly suggests that only

---

[2]The Chancellor found the other alleged instances, such as where the child saw his father's boyfriend at the apartment and at church, were not willful violations of the order; therefore, the Chancellor did not hold Mr. Hogue in contempt for those alleged instances.

those acts specified by the order will be treated as within its scope and that no conduct or action will be prohibited by implication" and that "all omissions or ambiguities in the order will be resolved in favor of any person charged with contempt." *Wright* at § 2955, p. 310.

Since the violation of an injunction can become a penal offense, injunctions are to be construed like penal and criminal statutes -- strictly in favor of the person charged with violating the injunction. 43 A C.J.S. Injunctions § 243, p. 537 (1978). Accordingly, the specificity requirements of Fed. R. Civ. P. 65(d) are not merely technical requirements. *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed. 2d 661, 664 (1974). Specificity is required for several reasons. First, if an injunctive order is too vague or general it is difficult to obey and difficult to enforce; thus there is a risk that the order could either be oppressive or ineffectual. *Wright* at § 2955, p. 316-317. For example, a bold person faced with a vague order may forge ahead with the very kind of conduct the court was trying to prevent, whereas a less aggressive person may refrain from conduct that the court did not intend to prohibit out of a fear of being punished. *Id*. at § 2955, p 320. Second, specificity is required because courts take violation of an injunctive order seriously, and severe punishment may be imposed on a violator. *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 439, 96 S.Ct. 2697, 2706, 49L.Ed. 2d. 599, 610 (1976). Third, in that punishment under the court's powers of contempt awaits the violator, fair notice should be provided to the restrained party. *Wright* at § 2955, p. 321. "Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L. Ed. 2d. 661, 664 (1974).

A further concern with vague and overly broad injunctions is the fear that a constitutionally protected right may be prohibited. *Wright* at § 2955, p. 325. An example of this infringement occurred in *Consolidation Coal Co. v. Disabled Miners of Southern West Virginia*, 442 F. 2d 1261, 1267(C.A. 4th, 1971) *certiorari denied* 404 U.S.911, 92 S. Ct. 228, 30 L.Ed. 2d 184 where the court prohibited miners from picketing or in "any other manner" interfering with operation of the mines or "inducing" the plaintiff's employees to withhold their services. The court concluded that such an order was too broad because there was no qualification such as "inducing by force and violence" and thus "pure expressions of opinion" would be prohibited causing First Amendment rights to be infringed. The United States Supreme Court analyzed a court's contempt powers coupled with a vague order and reasoned:

> The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid.

*International Longshoremen's Association, Local No. 1291 v. Philadelphia Marine Trade Assoc.* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed. 2d 236, 245 (1967).

Examples of how Tennessee courts have dealt with the specificity requirements of Rule 65.02(1) are limited. In *City of Knoxville v. Entertainment Resources*, the court found that an

injunction that prohibited a party "from operating an adult bookstore" while the case was pending violated Tenn. R. Civ. P. 65.02(1) because it failed to specify "in reasonable detail . . . the act . . . enjoined." The violation of Rule 65.02(1) flowed from the court's holding that the definition of "adult bookstore" in the ordinance at issue was unconstitutionally vague. *City of Knoxville v. Entertainment Resources, LLC.*, No. E2002-01143-COA-R3-CV, 2003 WL 22762195 at *8 (Tenn. Ct. App. Nov. 21, 2003).

In a case where an injunction required a business operator to remove items from property within a reasonable time and not place any further items on the property, the court examined whether the requirement of action "within a reasonable time," and "as soon as reasonably proper" failed to comply with Tenn. R. Civ. P. 65.02(1)'s specificity requirement. Interpreting Tenn. R. Civ. P. 65.02(1), the court found that this portion of the injunction did not meet the rule's requirements stating, "knowing the purpose of Rule 65 is to ensure that parties subject to an injunction are properly apprised of their obligations, we hold that courts are bound to use an objective standard in setting a time period under which a party must labor." *Cooper Management, LLC v. Performa Entertainment, Inc.*, No. W2001-01134-COA-R3-CV, 2002 WL 1905318 at *3 (Tenn. Ct. App. August 15, 2002).

The Domestic Relations Exception

Mrs. Hogue presents a vigorous argument that Tenn. R. Civ. P. 65.07 creates a domestic relations exception to Tenn. R. Civ. P. 65.02(1). She is correct to the extent she argues there is a "procedural" exception for domestic cases under Tenn. R. Civ. P. 65.07; however, she mistakenly relies on the procedural exception to reach the erroneous conclusion that such also constitutes a broad exception to the "specificity requirements" under Tenn. R. Civ. P. 65.02(1) and constitutional law. The domestic relations exception is set forth in Tenn. R. Civ. P. 65.07.

> In domestic relations cases, restraining orders . . . may be issued upon such terms and conditions and remain in force for such time as shall seem just and proper to the judge to whom application therefore is made, and the provisions of this Rule shall be followed only insofar as deemed appropriate by such judge.

Tenn. R. Civ. P. 65.02(1) provides that every restraining order or injunction shall be specific in terms and shall describe in reasonable detail the act restrained or enjoined. Tenn. R. Civ. P. 65.03(5) provides that restraining orders granted without notice shall expire within a maximum of fifteen days. Tenn. R. Civ. P. 65.07 makes an exception for domestic relations cases by allowing domestic restraining orders to be issued upon such terms and conditions and remain in force for such time as shall seem just and proper to the judge. The Committee Comment to Rule 65.07 provides the reasoning for the domestic relations exception, "It was recognized that in the handling of domestic relations cases, *some departure* from the handling suggested by these rules might be necessary, and the exception stated in Rule 65.07 was made accordingly." (emphasis added)

-5-

Mrs. Hogue relies heavily on *Wilson v. Wilson,* 987 S.W.2d 555 (Tenn. Ct. App. 1998) to argue that the rule applicable to domestic restraining orders affords trial judges broad discretion as to specificity and, therefore, the restraining order is enforceable. In *Wilson* the mother, Dr. Oakley,[3] was restrained from attempting to alienate the affections of the child to the father in any manner. She challenged the restraining order as unconstitutionally vague. This court disagreed.

> We think that at a preliminary stage of a domestic relations case, where the trial court learns (by pleadings or by statements in open court) that a controversy has arisen over one parent's attempt to alienate the child from the other parent, the trial judge may enjoin the parties not to engage in such offensive conduct. Rule 65.07 provides the trial judge with that flexibility.

> As to the vagueness charge, Dr. Oakley says that the order prohibiting her from "attempting to alienate the affections of this child to the father in any manner whatsoever" lacks sufficient detail to convey what the court expects of her. (citation omitted) We think, however, the injunction is sufficiently clear to provide a reasonable guide for a parent's personal conduct.

*Wilson,* 987 S.W.2d at 565.

The right of the non-custodial parent to reasonable visitation is clearly favored. *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). Nevertheless, "the right of visitation . . . may be limited, or eliminated, if there is definite evidence that to permit . . . the right would jeopardize the child in either a physical or moral sense."[4] *Suttles*, 748 S.W.2d at 429; (quoting *Weaver v. Weaver*, 261 S.W.2d 145, 148 (Tenn. Ct. App. 1953)). No hard and fast rules exist for determining which visitation arrangement will best serve child's needs; inquiry is factually driven and requires courts to carefully weigh numerous considerations. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn Ct. App. 1996). The best interests of the child may require the trial court to place restrictions on either or both of the parents regarding visitation. *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995).

While the details of visitation arrangements are generally left to the discretion of the trial court, this discretion is not unbounded, it must be based on proof and appropriate legal principles. *D v. K*, 917 S.W.2d at 685. Courts may restrict lawful activities that would jeopardize the child's welfare during visitation if there is definite evidence that to permit the right would jeopardize the

---

[3]The mother in *Wilson* was Dr. Oakley, having changed her name when the matter went to trial.

[4]In *Suttles,* the defendant assaulted his own child and the record established that the defendant had violent propensities toward both his former wife and their child. His need for psychological counseling and treatment was apparent. "While the mere fact that Defendant is presently incarcerated does not of itself preclude visitation, the combination of Defendant's incarceration, the crimes for which he is imprisoned, the age of the child, his history of violent behavior toward his son and Plaintiff, and his obvious need to deal with his violent temper make visitation inappropriate at this time." *Suttles*, 748 S.W.2d at 429.

child.  *Eldridge v. Eldridge*, 42 S.W.3d 82, 89 (Tenn. 2001)[5]  Examples of permissible restraints of lawful activities include prohibiting a parent from exposing the child to cigarette smoke in enclosed places.  *Smith v. Smith*,  No. 03A01-9603-CV-00078, 1996 WL 591181 * 4 (Tenn. Ct. App. Oct. 11, 1996) (child had sinus problems and cigarette smoking was shown to jeopardize the child's physical well-being.)  Divorcing spouses were restrained from having overnight visitation with the child in the presence of a non-spouse.  *Eldridge, at* 89.  Moreover, supervised visitation may be required where there is evidence of potential harm to the child.  *D v. K,* at 685. (supervised visitation was required upon proof that the father failed to exercise even minimal supervision of his five-year old twins for a period of five hours at a motel and upon proof of the father's cavalier attitude toward his obligation to protect the immuno-deficient children from exposure to infectious diseases.)

This court has long recognized the difficulties trial courts have in domestic cases--the near-impossible job of trying to deal with broken relationships while protecting the children of the marriage and preserving the respective rights of the parents.  Our recognition of that difficulty has not changed.  Nevertheless, Mrs. Hogue's argument that trial judges in domestic relations cases have broad discretion to fashion orders necessary to protect the welfare of children who may be harmed by the conduct of their parents is overstated.  Rule 65.02(1) requires that "*every* restraining order or injunction shall be *specific in terms* and shall describe in *reasonable detail*, . . . *the act restrained* or enjoined." (emphasis added) Rule 65.07 only permits "some departure," not unlimited departure.  More importantly, rules of procedure may not contravene constitutional constraints, and Mrs. Hogue's liberal application of the domestic relations exception would be in contravention of constitutional restraints.

For the foregoing reasons, we are unable to reach the conclusion reached by Mrs. Hogue that Tenn. R. Civ. P. 65.07, the domestic relations exception, supplants the specificity requirements of Tenn. R. Civ. P. 65.02(1) and applicable constitutional constraints.  The domestic relations exception in Tenn. R. Civ. P. 65.07 does not excuse a trial court from compliance with the specificity requirements of Tenn. R. Civ. P. 65.02(1) to describe the prohibited acts in reasonable detail.  Further, it does not excuse a trial court from having to determine whether there is sufficient evidence that to permit the right would jeopardize the child and thereby justify the restraint, and from having to limit the scope of the restraint to the evidence presented.  *See Eldridge*, 42 S.W.3d at 89 (*citing Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)).

<u>Analysis of the Hogue Restraining Order</u>

Mr. Hogue was restrained from exposing the child to his "gay lifestyle."[6]  Tenn. R. Civ. P. 65.02(1) requires that every restraining order or injunction shall be specific in terms and shall describe in reasonable detail the act restrained or enjoined. "Lifestyle" is certainly not a specific

---

[5]*Eldridge* arises out of a domestic relations dispute.  It specifically pertains to restraints on visitation.  It does not involve a restraining order.  Nevertheless, it is relevant to the issue presented.

[6]Appellant only challenges the aspect of the restraining order that pertains to exposing the child to his gay lifestyle.  Accordingly, we do not discuss that part of the restraining order that pertains to gay lover(s).

term.[7]  Moreover, adding the word gay or another adjective does little if anything to enhance the specificity of the term or the description of the acts restrained.  For example, prohibiting a parent from exposing a child to his or her "heterosexual" lifestyle or "urban" lifestyle or "stoic" lifestyle, without a description in reasonable detail of the acts restrained, affords little if any guidance to the court or the party restrained as to what is or is not restrained.

The above examples illustrate two important points.  One is that the resolution of the issue before us does not hinge on Mr. Hogue's sexual orientation.  Stated another way, the issue of whether the restraint on Mr. Hogue is valid, in a specificity challenge, exists whether or not the word "gay" is in the restraining order.  Accordingly, the parties' arguments pertaining to sexual orientation are misplaced.[8]  Moreover, it is not necessary to create new and different visitation rules and restraints depending on sexual orientation.  Visitation decisions should be guided by the best interests of the child.  *Turner v. Turner*, 919 S.W.2d 340, 346 (Tenn. Ct. App. 1995).  Generally, it matters little who the parent is or what he or she does when the child is not visiting.  What matters is whether the parental conduct during visitation is harmful to the child.  *See Smith v. Smith*, 1996 WL 591181, at * 4 (father was prohibited from smoking only during visitation).  Neither gay parents nor heterosexual parents have special rights.  They are subject to the same laws, the same restrictions.  Our courts should follow the same principles for placing restrictions on gay parents they use on any parents; those principles provide that after making an award of custody, the trial courts are to grant such rights of visitation as will enable the child and the non-custodial parent to maintain a parent-child relationship unless the court finds that visitation is likely to endanger the child's physical or emotional health.  Tenn. Code Ann. §  36-6-301.

The other important point illustrated by the above examples is that the term "gay lifestyle," like urban lifestyle, is anything but specific.  Therefore, in the absence of other limiting terms or provisions to better describe the prohibited acts, the term fails to satisfy the specificity requirements of restraining orders and injunctions.

Our inquiry would normally end here, however, Mrs. Hogue argues that *Eldridge* provides an exception to the specificity requirements.  *Eldridge* permits restricting lawful activities that would jeopardize the child's welfare during visitation if there is definite evidence that to permit the right would jeopardize the child.  *Id.*, at 89.  Mrs. Hogue provided evidence at the contempt hearing that the child's counselor had recommended that the child should not be advised that Mr. Hogue was gay without the counsel and participation of the counselor.  Mrs. Hogue claims this evidence is sufficient to render the restraint valid; however, contrary to Mrs. Hogue's argument, *Eldridge* does not stand for the proposition that such restraints may be vague or overly broad as long as there is some evidence of potential harm.  Indeed, *Eldridge* permits restricting lawful activities if there is proof

---

[7]Lifestyle is defined in one dictionary as "the way in which an individual lives, e.g., as to dress, habits, friendships, values, etc." *The New Lexicon Webster's Dictionary of the English Language*, Encyclopedic Edition (1990). It is defined as "a way or style of living" in 8 *The Oxford English Dictionary* 917 (2d ed. 1989).

[8]In his appeal from the contempt finding and sentence, Mr. Hogue did not raise other constitutional challenges.

such activities are harmful to the child; however, such restrictions must still pass the specificity test under Tenn. R. Civ. P. 65.02(1). The Hogue restraint does not.

Another problem with Mrs. Hogue's argument that there was evidence of potential harm justifying the broadly-worded restraining order is that Mrs. Hogue failed to connect the dots, meaning she failed to connect the evidence with the restraint. Mrs. Hogue states that she sought the restraining order to prevent Mr. Hogue from telling the child he was gay. The only support for her request is found in her sworn complaint wherein she stated that the child's counselor, "has indicated that it is not advisable for said child to be made aware of the Husband's new lifestyle." Whether or not this language refers to telling the child the father was gay, the restraining order she presented to the trial judge did not specify that act.[9] The language of the order was not specific enough to put Mr. Hogue on notice that his conversation with his son would violate the order. As stated earlier, any ambiguity or omissions in the language of the order must be construed in favor of a party charged with contempt.

The purpose of restraints on parental conduct is to protect the child. The right of visitation may be limited, or eliminated, if there is definite evidence that to permit the right would jeopardize the child. *Suttles*, 748 S.W.2d at 429. The restraints to be placed on Mr. Hogue should be no different from restraints courts routinely place on other parents to shield their children from conduct that may be harmful to the child. Such restraints should be well defined and must involve conduct that competent evidence shows could cause harm to the child. *See Bates v. Bates*, No. 03A01-9412-CH-00426, 1995 WL 134907, * 3 (Tenn. Ct. App. March 30, 1995) (trial court's order prohibiting visitation in the presence of the paramour was reversed for there was no showing of harm to the child.[10]); *see also Smith*, 1996 WL 591181, * 3 (the record contained evidence the father's cigarette smoking had jeopardized the child's physical well-being.). Legions of other cases are catalogued in W. Walton Garrett, *Tennessee Divorce, Alimony ad Child Custody* §§ *24-7, 25-4* (2000), which provide guidance to appropriate restrictions during visitation.

_____

[9] Mrs. Hogue relies on the testimony of David Thomas, the child's psychological therapist, at the contempt hearing. It had been his recommendation that the child be told his father was gay but that neither parent should tell the child Mr. Hogue is gay until it could be done with the counsel and participation of Mr. Thomas.

[10] The Chancellor prohibited the husband from having the child in the presence of a Ms. Myers during visitation. The appellate court held: "We do not find evidence that Ms. Myers' conduct, distasteful though much of it was, is calculated in the future to be harmful to the child, physically, emotionally, or otherwise. In the absence of such proof, the restriction in this case is not justified by the best interest of the child standard applicable to custody/visitation decisions. To the extent that the trial court imposed the restriction because it felt that Wife would be offended or hurt by the mere fact that the child is in the company of a woman whose conduct arguably caused or substantially contributed to the breakup of the marriage, it incorrectly substituted the best interest of Wife for the appropriate standard, the best interest of the child. The trial court's conclusion of law in this respect is erroneous. We find that the trial court committed error when it decreed the child could not be in the presence of Ms. Myers during Husband's visitation." *Bates,* 1995 WL 134907, *3.

-9-

Based upon the foregoing, we find the Hogue restraining order is deficient because it violates the specificity requirements of Tenn. R. Civ. P. 65.02(1) for it does not describe the prohibited acts in reasonable detail. Consequently, Mr. Hogue could not be held in contempt and punished for violating the order.

## Mrs. Hogue's Request for Damages

The final issue on appeal is Mrs. Hogue's prayer for damages, claiming this to be a frivolous appeal. In that Mr. Hogue prevailed, the appeal is not frivolous. Therefore, we deny Mrs. Hogue's request for damages.

## In Conclusion

In conclusion, we hold that Tenn. R. Civ. P. 65.02(1) requires restraining orders and injunctions to be as specific as reasonably possible and to describe in reasonable detail the act that is restrained or enjoined; that the "domestic relations" exception in Tenn. R. Civ. P. 65.07 does not excuse a trial court from compliance with the specificity requirements of Tenn. R. Civ. P. 65.02(1); and that the restraining order at issue does not meet the requirements of Tenn. R. Civ. P. 65.02(1) because it does not describe the prohibited acts in reasonable detail. Accordingly, we hold that the temporary restraining order is unenforceable and Mr. Hogue could not be punished for violating an unenforceable restraint or order.

We therefore reverse the holding of the trial court finding Mr. Hogue in contempt and remand this matter to the trial court. Costs are assessed equally against the parties.

_____
FRANK G. CLEMENT, JR., JUDGE

-10-