

FILED

03/03/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on February 16, 2017

## TAMARA REECE MILTON[1] v. RANDALL V. HARNESS, JR.

**Appeal from the Chancery Court for Loudon County**
**No. 12472      Frank V. Williams, III, Chancellor**

_____

### No. E2017-00092-COA-R10-CV

_____

This is an extraordinary appeal, filed pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure, seeking review of the Trial Court's *ex parte* injunction temporarily changing custody of the parties' six-year-old child ("Child"), born out-of-wedlock, pending the final adjudication of the Petition for Custody and Injunction ("Petition" or "Petition for Custody") filed by the Petitioner, Randall V. Harness, Jr. ("Father"), in which he seeks to legitimate and obtain custody of Child. We conclude that an extraordinary appeal is warranted, that both the *ex parte* injunction changing custody and the Trial Court's subsequent order continuing that injunction should be vacated, and that custody of Child be restored to the Respondent, Tamara Reece Milton ("Mother"), pending further action by the Trial Court.[2]

### Tenn. R. App. P. 10 Extraordinary Appeal;
### Judgment of the Chancery Court Vacated and Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and THOMAS R. FRIERSON, II, JJ., joined.

Stephanie G. Crippen, Knoxville, Tennessee, for the appellant, Tamara Reece Milton.

_____

[1]For purposes of this opinion, we have adopted the spelling of "Reece" reflected on the application filed in this Court, and not the incorrect spelling of "Reese" reflected in court documents below.

[2]Because Mother's Rule 10 application, together with Father's answer thereto, fully set forth the parties' positions and material facts necessary for review, we suspend pursuant to Rule 2 of the Tennessee Rules of Appellate Procedure application of Rules 10(d), 24, 25 and 29 of the Tennessee Rules of Appellate Procedure with regard to all further procedure in this Court, and conclude that oral argument is unnecessary pursuant to Rule 35(c) of the Tennessee Rules of Appellate Procedure. *See State ex rel. Dean v. Nelson*, 169 S.W.3d 648, 649 n. 1 (Tenn. Ct. App. 2004)(citing *Hammock v. Sumner Co.*, No. 01A01-9710-CV-00600, 1997 WL 749461 (Tenn. Ct. App., filed Dec. 5, 1997)).

David L. Valone, Knoxville, Tennessee, for the appellee, Randall V. Harness, Jr.

# OPINION

Mother and Father were never married. Child was born in October of 2010 in Arizona. Mother listed Father on Child's birth certificate. Shortly after Child's birth, Father was deployed to Afghanistan as a United States Marine from November of 2010 until March of 2011. Upon his return from deployment, Father was stationed at the Marine Corps Base in Southern California known as Twentynine Palms. In April of 2011, deoxyribonucleic acid (DNA) testing confirmed that Father is the biological father of Child. In May of 2011, Father signed an Acknowledgement of Paternity with the Arizona Department of Economic Security, as well as a sworn Marine's Statement acknowledging that he was Child's father and directing that $300.00 per month be provided to Mother by military allotment as support for Child. Father also applied for a Uniformed Services Identification Card and DEERS[3] enrollment for Child which allowed Child, as Father's dependent, to receive military benefits including health insurance. On that application, Father certified that he was "providing or maintaining [a] household [for Child]" and providing "over 50% support" for Child, as is required by the federal regulations defining the circumstances under which an illegitimate dependent child of a service member may obtain military dependent benefits. *See* 32 C.F.R. § 199.3(b)(2)(ii)(E). For the next seventeen months after his return from deployment, and while stationed in California, Mother granted Father informal visitation with Child on a regular basis. Father would travel to Arizona for this visitation, staying in hotels or with Mother or her grandparents.

In November of 2012, Father was discharged from the military and moved to Arizona where he attended school and continued his informal relationship with Child. In September of 2013, Father moved to Lenoir City, Tennessee. Despite the distance between them, Mother and Father maintained their arrangement of Father having informal visitation with Child, including Father traveling to Arizona and bringing Child back to Tennessee for extended visitation. However, there was never an order entered adjudicating Father to be Child's legal father or determining the custodial or visitation rights of the parties to Child. Child has lived with Mother since her birth.

In September of 2014, Mother moved with her sister and Child to Lenoir City, Tennessee. Shortly after her arrival, Mother obtained employment with CSL Plasma where she worked until October of 2016, when Mother and Child moved back to

---

[3] "DEERS is the acronym for Defense Enrollment Eligibility Reporting System, which is a computerized database maintained by the Department of Defense that maintains eligibility information for TRICARE, the health care program for service members, retirees, and dependants." *Mitchell v. U.S.*, No. 3:12CV15/MCR/EMT, 2012 WL 3063999, * 1 (N.D. Fla. June 14, 2012).

Arizona. Mother's sister remained and is still a resident of Knoxville, Tennessee. Prior to the move back to Arizona, Child had just started Kindergarten at Highland Park Elementary School in Lenoir City. During the approximately two years that Mother and Child lived in Tennessee, Mother allowed Father extensive informal visitation with Child.

Two weeks after Mother and Child moved back to Arizona, Father filed his sworn Petition seeking to legitimate and obtain custody of Child in the Chancery Court for Loudon County, Tennessee. Father asserted in his Petition that the Trial Court had jurisdiction to adjudicate the matter because Tennessee was Child's "home state" pursuant to the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"). *See* Tenn. Code Ann. § 36-6-205(7). Father further alleged in his Petition that the requirements for jurisdiction under the UCCJEA to make an initial custody determination of a child absent from the state were present. *See* Tenn. Code Ann. § 36-6-216(1)(a).

In his Petition, Father requested that the Trial Court issue an injunction upon the filing of the Petition "requiring the transfer of custody of the parties' minor child to [Father]," or, in the alternative, requiring Mother to "immediately return the minor child to Loudon County, Tennessee, pending the full adjudication of this matter." Father alleged in his Petition that "he has concerns for the well-being of the parties' minor child due to the instability of [Mother], in that there have been times when she and the minor child were living with [Mother's] grandmother, and because [Mother] was not willing to abide by the grandmother's reasonable 'house rules,' the [Mother] would become frustrated and needlessly leave her grandmother's home with the child and move to a potentially less appropriate, stable and safe environment—as she has done repeatedly in both Tennessee and Arizona since [Child] was born." Father also alleged in his Petition that Mother's "numerous moves with the parties' minor child were often due to domestic disagreements between [Mother] and the head of any of the given households, often without a plan of where to go next, showing little to no regard for the best interests and well-being of the parties' minor child." However, Father also alleged in his Petition that Mother "had a good, steady job for which she was paid well" while living in Tennessee. While Father alleged in his Petition that Mother had "sporadically moved between Lenoir City and Knoxville" during the time she lived in Tennessee, and that "she lived with either her sister, friends and/or co-workers" during that time, Father also alleged in his petition that Mother had only had two different addresses in Lenoir City during this time at which she had received mail and registered her vehicle.

In addition to his sworn allegations, Father accompanied his Petition with an affidavit in which he reaffirmed that Mother had worked at CSL Plasma for the entire time she had lived in Tennessee, but also asserted that he had "concern about her stability" because "she has moved numerous and frequent times and has resided with our

daughter at six different residences in the past two years." Yet Father also stated in his affidavit that, during the time she had attended Highland Park Elementary School, Child had done "very well in school." Father's affidavit also stated, without elaboration, that he felt Child "may suffer irreparable harm" if not returned to Tennessee and that it was in Child's "best interest" for him to be "granted primary care, custody and control of [Child] pending the resolution of the issue of custody." Father also attached to his Petition the Acknowledgement of Paternity he had signed with the Arizona Department of Economic Security, as well as the sworn Marine's Statement and application for Uniformed Services Identification Card and DEERS enrollment for Child discussed above.

On the day Father filed the Petition, the Trial Court entered its initial *ex parte* injunction directing Mother to "immediately return the minor child to Loudon County, Tennessee, pending the full adjudication of this matter." No findings of fact or conclusions of law were stated in this order, and none could have been made of record as the order was entered *ex parte* immediately upon the filing of the Petition. Mother was served with the *ex parte* injunction, along with the Petition, five days after it was entered. Shortly thereafter, Mother filed a motion to set aside the *ex parte* injunction on grounds that it had been invalidly issued in that she was the sole legal and physical custodial parent of Child pursuant to Tennessee Code Annotated section 36-2-303, and was not required to provide Father with prior notice of her intent to move to Arizona pursuant to Tennessee Code Annotated section 36-6-108(a).

Approximately two weeks after Mother filed her motion to set aside the *ex parte* injunction, and before the Trial Court could hear her motion to set aside, Father filed a new petition seeking to have Mother held in contempt for not complying with the *ex parte* injunction, and also seeking the immediate issuance of another injunction transferring custody of Child to Father. Father accompanied this petition with an affidavit in which he attested that Mother had failed to comply with the *ex parte* injunction requiring her to return Child to Tennessee.

Four days after the filing of Father's contempt petition, and still without having heard Mother's pending motion to set aside the initial *ex parte* injunction, the Trial Court entered a second *ex parte* injunction directing Mother to "immediately transfer of [sic] custody of the parties' minor child" to Father "for further adjudication by this Court." No findings of fact or conclusions of law were stated in this order, and none could have been made of record as the order again was entered *ex parte* and without a hearing. Within days of the issuance of this second *ex parte* injunction, Father traveled to Mother's home in Arizona with the injunction and, with the assistance of local law enforcement, removed Child from Mother's custody, returning to Tennessee with Child the next day. The day after Child's removal from Mother's home, Mother filed an emergency motion to set aside both the initial *ex parte* injunction, and the second *ex parte*

4

injunction which transferred custody of Child to Father. At the time Mother filed this emergency motion to set aside, she had not yet been formally served with the second *ex parte* injunction. Her knowledge of it came from Father's execution of the order at her home the day before.

Almost two weeks after the removal of Child from Mother's care, the Trial Court held a telephonic hearing on Mother's emergency motion to set aside both *ex parte* injunctions. After hearing argument from counsel, but no evidence, the Trial Court announced that the sworn allegations in Father's Petition for Custody, and accompanying affidavit, were sufficient to support issuance of both the initial and subsequent *ex parte* injunctions. Five days later, Mother filed her application for an extraordinary appeal with this Court, and we immediately directed the filing of an answer from Father pursuant to Rule 10(d) of the Tennessee Rules of Appellate Procedure.

On February 16, 2017, the Trial Court entered a written order denying Mother's emergency motion to set aside both *ex parte* injunctions. In support of this order, the Trial Court concluded that Tennessee was Child's "home state" and that Child "should have remained in Tennessee." The Trial Court further found that "it was not appropriate for [Mother] to pack up and leave the State of Tennessee with the minor child," that Mother was ordered to return Child to Tennessee, and that Mother did not adhere to that order. The Trial Court concluded that "it was justified in issuing the injunction for the child to stay in Tennessee in the father's care." On that basis, and because "the child is now in Tennessee" and "there are no safety issues," the Trial Court determined that Mother's emergency motion to set aside should be denied.

Upon consideration of the arguments made in Father's answer to Mother's application, we conclude that an extraordinary appeal is warranted because "the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review." Tenn. R. App. P. 10(a). We conclude that immediate relief should be granted to Mother and that Child be returned to her care and custody pending further action by the Trial Court on Father's Petition for Custody.

## ANALYSIS

"An appellate court should grant a Rule 10 extraordinary appeal only when the challenged ruling represents a fundamental illegality, fails to proceed according to the essential requirements of the law, is tantamount to the denial of a party's day in court, is without legal authority, is a plain and palpable abuse of discretion, or results in either party losing a right or interest that may never be recaptured." *Gilbert v. Wessels*, 458 S.W.3d 895, 898 (Tenn. 2014) (citing *State v. McKim*, 215 S.W.3d 781, 791 (Tenn. 2007), and *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980)). "Rule 10 appeals are reserved

only for *extraordinary* departures from the accepted and usual course of judicial proceedings." *Id.* (emphasis in original). As such, "[i]t is important for appellate courts to exercise restraint in granting Rule 10 appeals," and only grant such review if "the trial court's alleged error qualifies for immediate review under the specific criteria indicated by Rule 10." *Id.* at 898-99. With due respect to the Trial Court, we conclude that issuance of the *ex parte* injunctions in this case were not in accord with "the essential requirements of law," denied Mother her "day in court," were "without legal authority," and resulted in a loss to Mother of her unqualified right to exclusive custody of Child during the pendency of the proceedings below, the purpose of which are to establish Father's legal rights as a parent to Child.

We agree with Father that a trial court is afforded broad discretion in issuing temporary injunctions in domestic relations cases. *See* Tenn. R. Civ. P. 65.07; *Wilson v. Wilson*, 987 S.W.2d 555, 565 (Tenn. Ct. App. 1998). However, such discretion is not unfettered and completely detached from the basic requirements for the issuance of temporary injunctions set forth in Rule 65 of the Tennessee Rules of Civil Procedure. *See Hogue v. Hogue*, 147 S.W.3d 245, 250-52 (Tenn. Ct. App. 2004); *see also Marlow v. Parkinson*, 236 S.W.3d 744, 752 (Tenn. Ct. App. 2007). "More importantly, rules of procedure may not contravene constitutional constraints." *Hogue*, 147 S.W.3d at 252, *quoted in Marlow*, 236 S.W.3d at 752. In other words, Father's argument "that trial judges in domestic relations cases have broad discretion to fashion orders necessary to protect the welfare of children who may be harmed by the conduct of their parents" is overstated. *Id.* at 252.

In order to obtain a temporary injunction, Rule 65 requires that it be clearly shown "by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual." Tenn. R. Civ. P. 65.04(2). Rule 65 also requires a trial court to "set forth findings of fact and conclusions of law" when "granting, denying or modifying a temporary injunction." Tenn. R. Civ. P. 65.04(6). Thus, despite Father's arguments to the contrary, the provisions of Rule 65.07 do not permit entirely "dispensing with the requirement that the trial court enter reasons or findings of record when extending a TRO or when granting a temporary injunction." *Smith v. Smith*, No. 01A01-9511-CH-00536, 1996 WL 526921, * 3 (Tenn. Ct. App., filed Sept. 18, 1996). We recognize that, after these appellate proceedings were initiated, the Trial Court finally made findings of fact in support of the *ex parte* injunctions its February 16, 2017 order denying Mother's emergency motion to set aside both *ex parte* injunctions. However, these findings of fact do not support the Trial Court's legal conclusion that Father's sworn Petition for Custody, and his accompanying affidavit, demonstrated any violation of his "rights" by Mother as a result of her move with Child to Arizona, much less

6

that Father, or Child for that matter, would suffer immediate and irreparable harm without issuance of the *ex parte* injunction temporarily changing custody.

At the time Father filed his Petition for Custody and Injunction in the proceedings below, Mother was the sole legal and physical custodian of Child pursuant to Tennessee Code Annotated section 36-2-303, which states: "Absent an order of custody to the contrary, custody of a child born out of wedlock is with the mother." The fact that Father previously had signed an Acknowledgment of Paternity with the Arizona Department of Economic Security did not vest in him any custodial or visitation rights as a legal father. As this Court recently explained,

> A biological father who has signed an "acknowledgement of paternity" is declared the legal father with the obligation to pay support and the right to be given notice in the event of litigation or attempted termination of parental rights/adoption. The acknowledgment **does not** vest any custody rights or visitation rights upon the legal father.

*In Re Hailey S.*, No. M2016-00387-COA-R3-JV, 2016 WL 7048840, * 9 (Tenn. Ct. App., filed Dec. 5, 2016) (emphasis added). Father's application for a Uniformed Services Identification Card and DEERS enrollment for Child also did not create in Father or evidence that Father had any custodial or visitation rights as to Child. The federal regulations defining a dependent child of a service member for these purposes includes illegitimate children whose paternity has not yet been determined judicially. *See* 32 C.F.R. § 199.3(b)(2)(ii)(E). Mother also had no obligation to advise or notify Father of her intent to move with Child from Tennessee prior to doing so. *See* Tenn. Code Ann. § 36-6-108(a) (providing that notice provisions of parental relocation statute apply only "[a]fter custody or co-parenting has been established by the entry of a permanent parenting plan or final order"); *see also Dayhoff v. Cathey*, No. W2016-00377-COA-R3-JV, 2016 WL 4487813, * 5 (Tenn. Ct. App., filed Aug. 25, 2016) ("This Court has repeatedly held that the parental relocation statute is inapplicable when the trial court is making an initial custody decision or parenting arrangement for the child even if a parent is relocating.") (collecting cases).

We are sympathetic to the fact that Father may have mistakenly believed that Mother's move to Arizona with Child, without prior notice, somehow violated his "rights" as Child's father. However, given the fact that there has never been an initial custody order or parenting plan establishing the custodial rights of Father to Child, any "rights" Father may have as Child's biological father, or even as Child's putative biological father, did not include the "right" to notice of Mother's intent to move to Arizona with Child. *See In re Bernard T.*, 319 S.W.3d 586, 598-99 (Tenn. 2010) (discussing the differences between a biological father, a putative biological father, and a legal father). "Being a child's

7

biological father is not sufficient, by itself, to qualify a man as a child's legal parent or as a child's putative biological father." *Id.* at 598. In fact, establishing Father's "rights" as Child's legal father is the point of the proceedings below. *See* Tenn. Code Ann. § 36-2-311(a) ("Upon establishing parentage, the court shall make an order declaring the father of the child."). Until such time as the Trial Court enters an order establishing Father to be Child's legal father, there exists no legal parent-child relationship between Father and Child. *See* Tenn. Op. Att'y Gen. No. 90-68 (June 13, 1990). Even where, as here, a mother has listed a putative father on a child's birth certificate "or informally by other acts, words, or cohabitation, acknowledged that [a man] was the child's natural father, the putative father would still not have the legal status of a parent under Tennessee law." *Id.* As such, it is unclear upon what basis the Trial Court concluded that it was "not appropriate for [Mother] to pack up and leave the State of Tennessee with the minor child," or how this action justified the issuance of either *ex parte* injunction.

Our conclusion that Father's sworn Petition, and accompanying affidavit, failed to demonstrate any violation of his "rights" with regard to Child is enough to end our inquiry. Nevertheless, we note that the Trial Court's February 16, 2017 order made no findings that irreparable harm would occur if the *ex parte* injunction temporarily changing custody of Child from Mother to Father were not continued. When faced in the past with a similar deficiency involving the continuation of a temporary injunction changing custody in a modification proceeding, which injunction was issued following a parental move to an adjoining county within Tennessee, this Court determined that the trial court erred in continuing the injunction and restored the parties to the custodial arrangement that existed prior to issuance of the injunction. *See Price v. Price*, No. E1999-00102-COA-R10-CV, 2000 WL 704596, * 8 (Tenn. Ct. App., filed May 31, 2000).

## CONCLUSION

Based upon the foregoing, we vacate both of the Trial Court's *ex parte* injunctions and the order denying Mother's emergency motion to set aside both *ex parte* injunctions. We hereby reinstate the custodial arrangement that existed prior to issuance of the injunctions, by virtue of the statutory law of Tennessee, and direct that custody of Child be restored to Mother pending further action of the Trial Court. Costs on appeal are taxed to Father, for which execution may issue.

_____
JOHN W. MCCLARTY, JUDGE