IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2019 Session

## TODD SCOT v. ERIN DAWN SCOT

**Appeal from the Chancery Court for Williamson County**
**No. 41786    Robert E. Lee Davies, Senior Judge**

_____

### No. M2018-00562-COA-R3-CV
_____

This case involves competing petitions to modify a parenting plan and child support. The trial court denied the father's request to be designated as the primary residential parent, granted the mother sole decision-making authority, and enjoined the father from certain activities. The trial court also refused to decrease the father's child support obligation and awarded the mother $55,000 in attorney's fees. With regard to the trial court's modification of primary residential parent designation and the residential parenting schedule, we conclude that the trial court failed to make sufficient findings of fact and failed to conduct an appropriate best interest analysis. We also conclude that the trial court miscalculated the father's child support obligation by allotting to him an incorrect number of parenting days and by relying on his anticipated income rather than his actual income in the child support worksheet. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated In Part, Modified in Part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

P. Marlene Boshears, Franklin, Tennessee, for the appellant, Todd Scot.

Neil Campbell and Marissa L. Walters, Franklin, Tennessee, for the appellee, Erin Dawn Scot.

# OPINION

## I. BACKGROUND AND PROCEDURAL HISTORY

Erin Scot ("Mother") and Todd Scot ("Father") divorced in June 2013. The parties have two minor children, a nine-year-old son and a six-year-old daughter. The original parenting plan named Mother the primary residential parent with 265 days of parenting time. Following the divorce in 2013, Mother and the two minor children lived in Franklin, Tennessee for approximately one year. When Mother attempted to move to Fairview, Tennessee in August 2014, Father impeded the process.[1] Eventually, Mother moved to Fairview and met Jamie Ferrell, a former police officer with the Fairview Police Department. The two began dating, and in November 2015, Mother and the two children moved in with Mr. Ferrell.

After Mother and the two children moved in with Mr. Ferrell, Father began harassing them. For example, Father sent mail to their home, later asking the mail person whether Mother or Mr. Ferrell signed for the mail; Father ran background checks on Mr. Ferrell and requested his personnel file from the Fairview Police Department; Father frequently made derogatory posts on social media about Mr. Ferrell as well as the ongoing custody battle between him and Mother; and Father shared Mother's private medical information with Mr. Ferrell's former wife.

At the time of the divorce, Father was employed at Ernst and Young. His job required him to travel a great deal, and, as a result, he did not exercise the 100 days of parenting time allotted to him in the parenting plan. However, once Father was terminated from Ernst and Young, he exercised his parenting time on a much more regular basis and, since the spring of 2017, has not missed a day of parenting time.[2]

On May 2, 2017, Father filed the current petition to modify the parenting plan so as to designate him as the primary residential parent and to increase his number of parenting days from 100 to 250 and to decrease Mother's number of parenting days from 265 to 115. In his petition, Father alleged, among other things, that Mother had kept him from exercising his parenting time with the children, that Mother had discouraged the children from having a relationship with him, and that Mother had prohibited the children

---

[1] Mother was informed by the lessor of the apartment complex into which she was moving that she would need to provide birth certificates and social security cards for the children prior to the execution of the lease. Mother requested Father to send her the original birth certificates and social security cards, but he refused. Father did not supply Mother with these documents until the trial court ordered Father to bring them to court during a proceeding of the underlying case. This delay caused a further delay in enrolling/registering the son in kindergarten in Fairview because Mother could not provide proof of her living arrangements.

[2] Father returned to employment on January 2, 2018 when he began his new job with Hanu Software Solutions.

from communicating with him via video chat. On May 24, 2017, Mother filed her answer and counter-petition to modify the parenting plan, requesting, among other things, a decrease in Father's parenting time from 100 days to 80 days and to grant her sole decision-making authority. Mother also denied Father's allegations, noting his failure to exercise parenting time and stating that his conduct had made it impossible for the parties to make joint decisions.

On March 5, 2018, the trial court entered a memorandum order, modifying certain aspects of the permanent parenting plan. Among other things, the trial court granted Mother sole decision-making authority, limited Father's weekly communications with the children,[3] and enjoined Father from discussing child support payments with the children, recording or video-chatting with the children, signing the children up for any extracurricular activities, posting any information about the case on social media, and getting out of his vehicle when picking the children up from Mother's residence. Additionally, the trial court denied Father's request to be designated the primary residential parent as well as Mother's request to decrease Father's parenting time to 80 days. The trial court did not modify Father's child support obligation and, finding many of Father's pleadings frivolous, awarded Mother $55,000 in attorney's fees. Father timely appealed.

## II. ISSUES PRESENTED

As we perceive it, Father raises six issues on appeal, which we rephrase as follows:

1. Whether the trial court erred by refusing to modify the parenting plan so as to designate Father as the primary residential parent.
2. Whether the trial court erred in its modification of the parenting plan with regard to the residential parenting schedule, including the limitations it placed on Father's parenting rights.
3. Whether the trial court erred in its ruling on child support.
4. Whether the trial court erred in considering confidential information protected by statute.
5. Whether the trial court erred in awarding Mother attorney's fees.
6. Whether Father should be granted attorney's fees and costs on appeal.

---

[3] The trial court permitted Father "to have phone calls with the children every week on Monday at 5:30 p.m. for a reasonable period of time not to exceed thirty minutes. The calls shall not be conducted by video or Facetime."

## III. STANDARD OF REVIEW

In *Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013), the Tennessee Supreme Court set out the standards that apply to appellate review of a trial court's resolution of a petition to modify an existing permanent parenting plan:

> In this non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569. Statutory interpretation is a question of law, which we review de novo. *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012).

> A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d at 732; *Kendrick*, 90 S.W.3d at 570; *Hass*, 676 S.W.2d at 555.

*Armbrister*, 414 S.W.3d at 692.

## IV. DISCUSSION

### A. Modification of the Parenting Plan

Tennessee courts apply a two-step analysis to requests for a modification of the primary residential parent and a modification of the residential parenting schedule. *See Id.* at 697-98; *see also Gentile v. Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at *4 (Tenn. Ct. App. Dec. 9, 2015). In both requests for modification, the threshold issue is whether a material change in circumstance has occurred. *Armbrister*, 414 S.W.3d at 697-98. However, a material change in circumstance with regard to a primary residential parent is "a distinct concept" from a material change in circumstance with regard to a residential parenting schedule. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. §§ 36-6-101(a)(2)(B) and 36-6-101(a)(2)(C).

If the parent requests a modification of the primary residential parent designation, that parent must "prove by a preponderance of the evidence a material change in circumstance." *Massey-Holt*, 255 S.W.3d at 607. A material change in circumstance in this context may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation, or other circumstances that make the parenting plan no longer in the best interest of the child. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B). The change must have occurred after entry of the order sought to be modified, and the change must not have been reasonably foreseeable when the prior order was entered. *See, e.g., Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007).

If the parent requests a modification of the residential parenting schedule, the threshold for establishing a material change in circumstance is much lower. *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *6 (Tenn. Ct. App. Aug. 31, 2015). The parent must "prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest," Tenn. Code Ann. § 36-6-101(a)(2)(C), and, like a material change of circumstance for modification of the primary residential parent, such change must have occurred after entry of the order sought to be modified. *Caldwell*, 250 S.W.3d at 870. However, unlike the standard for a modification of the primary residential parent, whether the change was reasonably anticipated when the prior residential parenting schedule order was entered is irrelevant. *Armbrister*, 414 S.W.3d at 703. Ultimately, to modify a residential parenting schedule, "merely showing that the existing arrangement [is] unworkable for the parties is sufficient to satisfy the material change of circumstance test." *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006).

Once the trial court has determined that there has been a material change in circumstance, the court then must determine if a modification is in the child's best interest and, if so, fashion a plan that is in the child's best interests. *Armbrister*, 414 S.W.3d at 697-98, 705. In order to determine whether modification of the primary residential parent or modification of a residential parenting schedule is in a child's best interest, the trial court is directed to consider the factors enumerated in Tennessee Code Annotated section 36-6-106(a). "[W]hile the statute requires the trial court to consider all the applicable factors, there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted" the court's ultimate determination. *Murray v. Murray*, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010). However, this Court has encouraged trial courts to "be as precise as possible in making child custody findings" in order to facilitate meaningful appellate review. *In re Elaina M.*, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 (Tenn. Ct. App. Oct. 25, 2011).

Here, with regard to Mother's and Father's competing petitions to modify the parenting plan, the trial court modified the residential parenting schedule by granting all

major decision-making authority to Mother and enjoining Father from certain activities.[4] Additionally, the trial court denied Father's request to be designated as the primary residential parent

## Residential Parenting Schedule

With regard to its modification of the residential parenting schedule, the trial court found that a material change in circumstance existed warranting modification.[5] The proof in the record does not preponderate against this finding. Since the entry of the original parenting plan, Father had engaged in a pattern of harassing and invasive behavior toward Mother and Mr. Ferrell. Father had also used the joint-decision making provisions of the parenting plan to frustrate Mother's efforts at co-parenting, as is evidenced by his attempts to impede her move to Fairview, Tennessee. Moreover, as the trial court stated, "both parties agree that joint-decision making has been a disaster." As this Court has stated, "merely showing that the existing arrangement [is] unworkable for the parties is sufficient to satisfy the material change of circumstance test" regarding a modification of the residential parenting schedule. *Rose*, 2006 WL 2390980, at *2 n.3; *see also Lovlace v. Copley*, 418 S.W.3d 1, 32 (Tenn. 2013) (holding that "evidence that the parties' relationship has degenerated to the point that an existing visitation arrangement has proven unworkable in a significant way is sufficient to establish a material change"). The trial court, therefore, did not err in finding that a material change in circumstance existed with regard to modifying these portions of the residential parenting schedule.

However, there is a lack of findings evidencing that the trial court performed an appropriate best interest analysis in its modification of the residential parenting schedule. The trial court's order simply states that "[t]he purpose of these modifications is for the best interest of the children." There is no indication that the best interest factors in Tennessee Code Annotated section 36-6-106(a) were given any serious consideration. While "[a]scertaining a child's best interests does not call for a rote examination of each of [the relevant] factors[,]" *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005), sufficient factual findings are mandated by both Tennessee Rule of Civil Procedure 52.01 and Tennessee Code Annotated section 36-6-101.[6] "[F]indings of fact are particularly

---

[4] Regarding the residential parenting schedule, the trial court also denied Mother's request to decrease Father's parenting time, leaving his days of parenting time listed at 100 days.

[5] Father argues on appeal that the trial court was vague and overbroad in its limitations on his parenting rights. We discuss this argument in the next section.

[6] Tennessee Code Annotated § 36-6-101(a)(2)(B) pertains only to a "modification of the court's prior decree pertaining to *custody*" and provides that, "[i]n each contested case, the court *shall* make such a finding as to the reason and the facts that constitute the basis for the custody determination." Tenn. Code Ann. § 36-6-101(a)(2)(B)(i)-(ii) (emphases added). While there is no similar language in section 36-6-101(a)(2)(C)—which pertains to modification of the court's prior decree pertaining to a *residential parenting schedule*—Tennessee Rule of Civil Procedure 52.01 nevertheless provides, in relevant part, that

important in cases that involve the custody and parenting schedule of children." *Roberts v. Roberts*, No. W2015-00048-COA-R3-CV, 2015 WL 9466011, at *8 (Tenn. Ct. App. Dec. 28, 2015). Indeed, the best interest of a child is a "fact-intensive issue," *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *4 (Tenn. Ct. App. Feb. 22, 2013), and the absence of appropriate findings can significantly inhibit this Court's ability to review the propriety of a modification decision. Such is true in this case. Consequently, we vacate the judgment of the trial court as it pertains to modification of the residential parenting schedule and remand for the trial court to consider all relevant factors and to apply these factors in determining whether or not the modification is in the children's best interest.

## Primary Residential Parent

With regard to Father's petition to modify the primary residential parent designation, the trial court, without any additional analysis, denied such request "for the reasons set forth above[,]" referencing its modification of the residential parenting schedule. Tennessee Code Annotated section 36-6-101(a)(2)(B)(ii) provides that, if the issue before the court is a modification of the primary residential parent, "the court *shall* make such a finding as to the reason and the facts that constitute the basis for the custody determination." Tenn. Code Ann. § 36-6-101(a)(2)(B)(ii) (emphasis added). In *Knight v. Mackus*, this Court held that a trial court failed to comply with this statutory mandate because it "merely denied Father's modification petition without stating whether he had failed to show a material change in circumstance[.]" *Knight v. Mackus*, No. W2009-01099-COA-R3-CV, 2010 WL 1462534, at *3 (Tenn. Ct. App. Apr. 13, 2010). Similarly, here, the trial court's blanket statement "for the reasons set forth above" fails to alert this Court as to its specific findings on this issue. Moreover, the trial court's denial of Father's request to be designated as the primary residential parent is under a section of the trial court's order titled "Residential Schedule." Accordingly, this Court cannot determine whether the trial court even considered Father's petition to be designated as the primary residential parent separate and apart from its consideration of Mother's and Father's competing petitions to modify the residential parenting schedule. *See Massey-Holt*, 255 S.W.3d at 607 (noting that a material change in circumstance with regard to a primary residential parent is a "distinct concept" from a material change in circumstance with regard to a residential parenting schedule). We conclude that the trial court failed to make findings sufficient to allow this Court to understand the basis for its

"[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. Moreover, in similar cases, this Court has vacated the judgments of trial courts where they failed to make findings to support their rulings or where they failed to engage in a best interest analysis. *See, e.g., Iman v. Iman*, No. M2012-02388-COA-R3-CV, 2013 WL 7343928, at *13 (Tenn. Ct. App. Nov. 19, 2013 (vacating the judgment of the trial court when it failed to make appropriate findings of fact and failed to "make an explicit finding that modification [of the residential parenting schedule] was in the child's best interest").

determination and, in turn, to conduct a meaningful appellate review. Consequently, we vacate the judgment of the trial court as it pertains to Father's petition to modify the primary residential parent designation and remand for the trial court to make appropriate findings of fact as to whether a material change of circumstance exists and, if so, to conduct an appropriate best interest analysis.

## B. Restrictions on Father's Parenting Time and Statutory Rights

In the present case, the trial court's order limited Father's parenting rights with the following injunctions:

> 2. Father is enjoined from getting out of his vehicle when he is picking up the children at Mother's residence.
>
> 3. Father is enjoined from:
>     a. Discussing his payments of child support with the children;
>     b. Recording his children;
>     c. Signing the children up for extracurricular activities[;]
>     d. Posting any information regarding this case, Mother, any member of Mother's family, or Jamie Ferrell and his family on any social media.

Father argues that the trial court erred in "limiting, restricting, and/or circumscribing [his] parenting time in an overbroad and vague manner such that it infringed on Father's constitutional rights to parent his children." We agree with Father with respect to three aspects of the injunction: (1) recording his children; (2) signing the children up for extracurricular activities; and (3) posting any information about the case on any social media.

The purpose of restraints on parental conduct is to protect the child. *Marlow v. Parkinson*, 236 S.W.3d 744, 751 (Tenn. Ct. App. 2007). The restraints placed on a parent should be well-defined and must involve conduct that competent evidence shows could cause harm to the child. *Id.* (citing *Bates v. Bates*, No. 03A01-9412-CH-00426, 1995 WL 134907, at *3 (Tenn. Ct. App. Mar. 20, 1995)). If there is competent evidence that shows the conduct at issue could cause harm to the child, then a restraining order or injunction may be issued pursuant to Tennessee Rule of Civil Procedure 65.02. *Id.* at 752. The injunction, however, must be specific, not general. As Rule 65.02 provides, "[e]very restraining order or injunction shall be specific in terms and shall describe in reasonable detail, and not by reference to the complaint or other document, the act restrained or enjoined." Tenn. R. Civ. P. 65.02(1). Although Tennessee Rule of Civil Procedure 65.07 permits "some departure" from the specificity requirements in domestic

cases, that departure is not unlimited.[7] *Hogue v. Hogue*, 147 S.W.3d 245, 252 (Tenn. Ct. App. 2004). As this Court has stated:

> The domestic relations exception in Tenn. R. Civ. P. 65.07 does not excuse a trial court from compliance with the specificity requirements of Tenn. R. Civ. P. 65.02(1) to describe the prohibited acts in reasonable detail. Further, it does not excuse a trial court from having to determine whether there is sufficient evidence that to permit the right would jeopardize the child and thereby justify the restraint, and from having to limit the scope of the restraint to the evidence presented.

*Id.* More importantly, however, rules of procedure may not contravene constitutional constraints. *Marlow*, 236 S.W.3d at 752 (citing *Hogue*, 147 S.W.3d at 252).

With regard to the trial court's limitation of Father's right to record his children and to sign them up for extracurricular activities, the injunction is deficient because it fails to describe the prohibited acts in reasonable detail. Father correctly notes that such an overly broad limitation would prohibit him from ever "videotaping or audiotaping the plays, choral performances, athletic games, or memorable home videos of Christmas mornings" or from signing the children up for *any* extra-curricular activity during his parenting time.[8] Accordingly, this aspect of the injunction is overly broad and therefore unenforceable. With regard to the trial court's limitation of Father's social media posting, the injunction is deficient because it is overly broad and vague. In *Gider v. Hubbell*, this Court addressed a similar injunction. There, the trial court had enjoined a mother from "referencing the father 'at all on social media' or making disparaging remarks about the father on social media." *Gider v. Hubbell*, No. M2016-00032-COA-R3-JV, 2017 WL 1178260, at *11 (Tenn. Ct. App. Mar. 29, 2017). While we held that "it is entirely proper for the juvenile court to restrict Mother from making disparaging and clearly defamatory remarks about Father online[,]" we also held that some aspects of the injunction were deficient because "[t]he prohibition against *any* mention of Father by Mother on social media would prohibit even the most benign reference to Father." *Id.* at *12 (emphasis added). The same is true here. Prohibiting Father from posting *any* information about Mother, Mr. Ferrell and his family, or the case on any social media platform would "prohibit even the most benign reference" to Mother, Mr. Ferrell and his family, or the case. Accordingly, this aspect of the injunction is overly broad and vague

---

[7] Tennessee Rule of Civil Procedure 65.07 provides that, in domestic relations cases, restraining orders or injunctions "may be issued upon such terms and conditions and remain in force for such time as shall seem just and proper to the judge to whom application therefor is made, and the provisions of this Rule shall be followed only insofar as deemed appropriate by such judge." Tenn. R. Civ. P. 65.07.

[8] We note that the parenting plan grants Mother sole decision-making authority; however, as Father notes in his brief, "parents must often 'sign up' children for 'extra-curricular' activities such as birthday parties held at pools, gymnastics studios, bouncy house venues, bowling alleys, and climbing parks."

and therefore unenforceable. Consequently, we modify the trial court's injunction by removing the three limitations addressed above. Our ruling, however, does not preclude the trial court from expanding its injunctions in the future to cover additional aspects, if necessary, provided such restraints are supported by adequate factual findings and satisfy the specificity requirements of Tennessee Rule of Civil Procedure 65.02(1).

## C. Child Support

Father raises two arguments with regard to the trial court's child support calculation. First, Father contends that the trial court failed to consider his 2017 income; additionally, Father contends that the trial court allotted him an incorrect number of parenting days on the child support worksheet.

Modification of child support is governed by Tennessee Code Annotated section 36-5-101(g)(1). Modification of an existing child support order must be based on a significant variance, which the Child Support Guidelines define as "at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order[.]" Tenn. Comp. R. & Regs. 1240-02-05-.05(2)(c). The procedure for determining whether a significant variance exists is set forth in the Child Support Guidelines as follows:

> To determine if a modification is possible, a child support order shall first be calculated on the Child Support Worksheet using current evidence of the parties' circumstances . . . . If the current child support order was calculated using the income shares guidelines, compare the presumptive child support order amounts in the current and proposed orders.

Tenn. Comp. R. & Regs. 1240-02-05-.05(3). "Because child support is based on income, an award for future support, including prospective modification, is necessarily based upon most recent actual income." *Tinsley v. Tinsley*, No. M2001-02319-COA-R3-CV, 2002 WL 31443210, at *4 (Tenn. Ct. App. Nov. 1, 2002). In the present case, the trial court found that, for 2018, "Father will earn $175,000 a year or $14,583 a month" and that the "child support worksheet which is attached indicates that there has not been a significant variance as defined by the Guidelines; therefore, the child support shall continue at the current amount of $2,234 per month." Father argues that the trial court erred by using his 2018 anticipated income instead of his 2017 income in its calculation of his child support obligation. We agree.

As previously stated, "an award for future support, including prospective modification, is necessarily based upon *most recent actual income*." *Tinsley*, 2002 WL 31443210, at *4 (emphasis added). Accordingly, the trial court erred in basing its determination on Father's *anticipated* 2018 income rather than his actual 2017 income. Mother argues on appeal that Father admitted his incomes for 2017 and 2018 were

- 10 -

"'around' the same amount." This argument, however, is not supported by the evidence in the record. With regard to his 2018 income, Father testified that his base salary would be $130,000 and that, plus commissions, he could potentially earn $210,000. It appears that the trial court averaged Father's base and potential salaries of $130,000 and $210,000, respectively, in reaching its determination that he would earn $175,000 in 2018. While Father did admit that his 2018 income would be "around the same" as his 2017 income, Father testified as follows with regard to his 2017 income:

> Q: So in the year of 2017, [you made] $130 – plus $20,000, $150,000?
> A: Plus $4,000 approximately on – I have my own small consulting company called Mission Control . . . .
> Q: Were there also unemployment benefits that you received in 2017?
> A: I did.
> Q: How much were those in total?
> A: $1,400.
> Q: So around $155,000?
> A: That's correct.
> Q: And you're expecting to make around $160—; so not far from that in 2018?
> A: Correct. Let's not forget my real estate as well . . . . [Y]ou may want to add $10,000 onto that.
> Q: For 2017?
> A: Yeah. Just to be safe . . . .
> Q: So maybe as much as $165,000 from [2017]?
> A: Yeah.

The record reflects Father testified that his income for 2017 was not $175,000, but rather around $165,000. Accordingly, we conclude that the trial court erred in using Father's anticipated income in its modification of his child support obligation. We, therefore, vacate the trial court's judgment as it pertains to modification of Father's child support obligation and remand to the trial court for a new calculation, using Father's 2017 income.

Father also argues that the trial court erred by failing to use the correct number of parenting days allotted to him in its determination of his child support obligation. The original parenting plan granted Father 100 days of parenting time, the day-to-day schedule providing that Father would have custody of the children "[e]very other Friday from 4:00 p.m. at the children's school (or mother's home) until Sunday at 6:00 p.m." The new parenting plan ordered by the trial court similarly granted Father 100 days of parenting time; however, the day-to-day schedule provided that Father would have custody of the children "Friday from pick up from school until return to school Monday morning every other weekend." As Father correctly notes in his brief on appeal, the Child Support Guidelines define a "day" of parenting time as

- 11 -

when the child spends more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.

Tenn. Comp. R. & Regs. 1240-02-04-.02(10). Accordingly, by extending Father's parenting time from "Sunday 6:00 p.m." to "return to school Monday morning[,]" the trial court effectively granted Father an additional day every other weekend in the new parenting plan. However, in its child support calculation, the trial court attributed to Father only 100 days. As this Court has stated, the Child Support Guidelines "contemplate that the number of 'days' spent with each parent, as reflected on the worksheets, will be the *actual number* of days spent in the care of each parent, as opposed to the number of days established under the permanent parenting plan." *Hibbens v. Rue*, No. E2014-00829-COA-R3-CV, 2015 WL 3643421, at *6 (Tenn. Ct. App. June 12, 2015) (emphasis added); *see also Allen v. Allen*, No. M2013-00271-COA-R3-CV, 2014 WL 1713231, at *5 (Tenn. Ct. App. Apr. 28, 2014) ("Child support shall be calculated based upon the *actual number* of annual days Mother and Father exercise parenting time[.]") (emphasis added). We, therefore, vacate the trial court's judgment as it pertains to a calculation of Father's child support obligation and remand for a new child support calculation based upon the actual number of days Father will exercise.[9] Additionally, the trial court shall adjust Father's number of parenting days in the parenting plan to reflect the additional days granted to Father by the day-to-day schedule.

## D. Confidential Information

Father asserts in his brief on appeal that, during discovery, "Judge Woodruff ruled at the deposition that Father must answer whether or not he had called the Department of Children's Services for a referral of child abuse or neglect[.]" Father argues that the trial

---

[9] Mother correctly notes that the majority of the original and new parenting plans is based on the children's school calendar, which is absent from the record. In her brief on appeal, Mother argues that "[i]t is impossible to calculate the number of days that Father should . . . have when the record is devoid of the children's school calendar." This Court addressed this same issue in a recent opinion. In *Sample v. Sample*, the father argued that he should have 116 days of parenting time, despite the parenting plan—which was also based on the children's school calendar—and child support worksheet indicating that he had only 100 days of parenting time. *Sample v. Sample*, No. M2017-02409-COA-R3-CV, 2018 WL 4203545, at *6 (Tenn. Ct. App. Sept. 4, 2018). There, because the record was devoid of the school calendar, we held that "it is impossible to determine whether the trial court incorrectly calculated Husband's parenting time." *Id*. ("Without more, we must find that the evidence does not preponderate against the trial court's calculation that Husband has 100 days of parenting time."). Here, however, such a conclusion is not warranted. While the record is devoid of the school calendar, Father has pointed to an inconsistency in the original and new parenting plans, which indicates that he should have more parenting days; in *Sample*, the father simply argued—without proof—that he should have more parenting days.

- 12 -

court erred in admitting into evidence and considering confidential information in its modification of the parenting plan. Father, however, fails to direct this Court to any evidence admitted during the underlying trial that should not have been admitted. Father simply refers to a ruling Judge Woodruff made in response to a dispute that arose during Father's deposition; yet Judge Woodruff's ruling and Father's deposition are not in the record on appeal. As the Tennessee Supreme Court has stated, "[w]here the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue." *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993). Moreover, the record reflects that, during his testimony at trial, Father volunteered the same information he now argues should have been kept confidential:

> [Father's Counsel]: So you didn't make necessarily a new report to DCS every time that you may have said something to the DCS worker, Ms. Bowan?
> [Father]: Correct, there [were] only two reports.
> . . . .
> Q: When you contacted DCS, [Father], did you do it to harass [Mother]?
> A: Absolutely not.
> . . . .
> Q: And do you think that using DCS is a very effective way to resolve co-parenting issues between you and [Mother]?
> A: No. I had no choice.

As we have stated, this Court "is not required to grant relief to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error. In other words, we are not required to grant leave to a party who invited error." *Glass v. SunTrust Bank*, 523 S.W.3d 61, 79 (Tenn. Ct. App. 2016). Father cannot claim error regarding the trial court's consideration of certain information he argues should have been kept confidential when he, by his own testimony, offered the same information into evidence. Accordingly, we decline to grant Father any relief with respect to this issue.

## E. Attorney's Fees

Lastly, Father argues that the trial court erred in awarding Mother attorney's fees and requests that we grant him an award of attorney's fees and costs on this appeal. Tennessee Code Annotated section 36-5-103(c) provides as follows:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a

permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c). As the Tennessee Supreme Court has stated, "a determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion." *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). Here, the trial awarded Mother $55,000 in attorney's fees and expenses, finding that "many of Father's pleadings were frivolous and had no purpose other than to harass and intimidate Mother" and that "Mother was the prevailing party on the majority of the issues[.]"

While the trial court found that "many of Father's pleadings were frivolous and had no purpose other than to harass and intimidate Mother[,]" the trial court failed to describe which of Father's pleadings it found frivolous and why it reached such a determination. In its order, the trial court noted that Father filed numerous criminal contempt petitions; Father, however, filed each of these petitions prior to filing the current petition to modify the parenting plan, which is the pleading underlying this appeal. Moreover, we have already concluded that the trial court failed to make sufficient findings and failed to conduct an appropriate best interest analysis with regard to its modification of the parenting plan, that several of the trial court's injunctions on Father's parenting rights were overbroad and vague, and that the trial court erred in its calculation of Father's child support obligation. Given our rulings herein and the posture of the case, we vacate the trial court's award of attorney's fees against Father and remand for reconsideration upon its adjudication of the remaining issues.

With regard to Father's request for attorney's fees on appeal, this Court has stated that

It is in the sole discretion of this court whether to award attorney's fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered.

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723, at *13 (Tenn. Ct. App. Sept. 18, 2007) (internal citations and quotation omitted). While Father was successful on some of his issues on appeal, there still exists a significant disparity between Mother's and Father's monthly incomes. We deny Father's request for attorney's fees on appeal and order that Mother and Father be responsible for their own costs and fees.

- 14 -

## V. Conclusion

For the reasons set forth above, we vacate the trial court's judgment with respect to its modification of the parenting plan, its child support calculation, and its award of $55,000 in attorney's fees to Mother. We also modify the trial court's injunction by removing the following limitations placed on Father's parenting rights: recording or video-chatting with the children, signing the children up for any extracurricular activities, and posting any information about the case on social media. We remand to the trial court for such further proceedings as may be necessary and consistent with this opinion.

_____
ARNOLD B. GOLDIN, JUDGE